# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| BELTSVILLE LAND, LLC, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION 17-0551-WS-B |
| THOMAS R. CONABOY, *et al.*, | ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on defendants' Motion to Dismiss or, in the Alternative, Motion to Compel Arbitration (doc. 3). The Motion has been briefed and is now ripe for disposition.

**I.     Background.**

This action arises out of a construction agreement between plaintiff, Beltsville Land, LLC ("Beltsville"), and defendant Caldwell & Santmyer, Inc. ("Caldwell"), for a project located in Beltsville, Maryland. (Doc. 1-1, ¶ 5.) Caldwell subsequently assigned that agreement to defendant C&S Design & Development Company, LLC ("C&S"), which (along with Caldwell) is principally owned by defendant Thomas R. Conaboy ("Conaboy"). (*Id.*, ¶¶ 8, 11.) According to well-pleaded allegations of the Complaint, Caldwell and C&S "were a mere sham organized and operated as the alter ego of Conaboy for his personal benefit and advantage," with Conaboy "exercis[ing] total dominion and control" over those entities and "intermingl[ing] his personal and financial affairs with Caldwell and C&S." (*Id.*, ¶ 12.)

Beltsville's claims relate to a series of allegedly false applications submitted by defendants to Beltsville for payment on the Maryland construction project in 2016 and 2017. Each payment application was accompanied by a waiver in which defendants certified and represented that all subcontractors had been paid in full for their work on the project to date, and purported to indemnify Beltsville from any claims resulting from services, labor, material or equipment furnished to or by defendants. (Doc. 1-1, ¶ 18.) Beltsville alleges that defendants falsely represented in those payment applications that all subcontractors and suppliers had been

paid in full, and that multiple subcontractors have since pursued legal claims against Beltsville for nonpayment on the project. (*Id.*, ¶¶ 21-26.) On the strength of these allegations, Beltsville asserts causes of action for breach of contract (*i.e.*, defendants failing to pay subcontractors and suppliers as they had promised Beltsville they would), unjust enrichment (*i.e.*, defendants retained funds from Beltsville that were earmarked to pay subcontractors and suppliers), fraud (*i.e.*, defendants misrepresented payment status of suppliers and subcontractors in their payment applications to Beltsville), conversion, negligence and indemnity.[1]

Defendants now move to dismiss the Complaint for want of personal jurisdiction and to dismiss all claims against defendant Conaboy for failure to state a claim. Alternatively, defendants seek an order compelling arbitration of these proceedings.

## II. Motion to Dismiss.

### A. *Personal Jurisdiction.*

As a threshold matter, defendants argue that this Court lacks jurisdiction over them. According to defendants, they are Virginia citizens who lack the sort of continuous and systematic contacts with Alabama to support general personal jurisdiction, and who lack sufficient Alabama contacts related to this dispute to give rise to specific personal jurisdiction. In response, Beltsville contends that sufficient contacts exist to allow courts in Alabama to exercise specific personal jurisdiction over each defendant.

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (similar). "A *prima facie* case is established if the plaintiff presents affidavits or deposition testimony sufficient to defeat a motion for judgment as a matter of law." *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010). "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden

---

[1] This action was initially filed in the Circuit Court of Mobile County, Alabama. On December 14, 2017, however, defendants filed a Notice of Removal (doc. 1), removing the case to this District Court. Removal jurisdiction was properly predicated on the diversity provisions of 28 U.S.C. § 1332, inasmuch as plaintiff is an Alabama citizen for diversity purposes, each defendant is a Virginia citizen for diversity purposes, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *United Technologies*, 556 F.3d at 1274 (citation and internal quotation marks omitted). "The burden, however, does not shift back to the plaintiff when the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Louis Vuitton*, 736 F.3d at 1350 (citation and internal quotation marks omitted). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted)

Defendants are correct that the Complaint articulates precious few facts connecting defendants to the State of Alabama. Indeed, the Complaint reflects that all defendants are domiciled in Virginia and that they contracted with Beltsville to perform a construction project in Maryland. (Doc. 1-1, at ¶¶ 2-5.) The discussion of Alabama in the Complaint is confined to the following allegations: (i) Beltsville is an Alabama limited liability company whose principal place of business is located in Mobile, Alabama; (ii) the allegedly false payment applications "were submitted by Defendants to Plaintiff … at [plaintiff's] office in Mobile County, Alabama" (*id.*, ¶ 15); and (iii) "[a]ll payments to be made to Defendants pursuant to the Agreement have been made by Plaintiff through its bank in Mobile County, Alabama" (*id.*, ¶ 24). In briefing the Motion to Dismiss, Beltsville submits the Declaration of Taylor M. Watson, who declares that (i) defendants submitted each payment application to Beltsville in Alabama, (ii) "Payments were issued from Beltsville Land, LLC's bank in Alabama," (iii) defendants' alleged false representations in 2016 and 2017 were "submitted to Beltsville Land" in Alabama, and (iv) "Beltsville Land, LLC has conducted much of its business with the Defendants from its offices in Alabama." (Doc. 9, Exh. 1, ¶¶ 4-6, 10.) In a nutshell, then, plaintiff's jurisdictional case is predicated on evidence that defendants contracted with an Alabama entity, directed false and fraudulent misrepresentations to that entity in Alabama, and wrongfully induced payments from that entity via an Alabama bank.

Confronted with these jurisdictional facts, defendants offer the Declaration of Thomas R. Conaboy (doc. 11, Exh. A). For his part, Conaboy indicates that he submitted or caused to be submitted the subject payment applications to Beltsville "via electronic mail to Taylor M. Watson, a representative of Beltsville," who is also plaintiff's declarant. (*Id.*, ¶ 5.) Conaboy

states that to the best of his knowledge, Watson "lived in New York (not Alabama) and maintained a California phone number" listed in his email correspondence. (*Id.*, ¶ 6.)

The trouble with defendants' factual submission is that it does nothing more than create a conflict in the evidence, which must be construed in plaintiff's favor on a Rule 12(b)(2) motion. *See, e.g., PVC Windoors*, 598 F.3d at 810 ("Where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff.") (citation omitted); *S & Davis Int'l, Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000) ("If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party.") (citation omitted). Accordingly, for purposes of the Motion to Dismiss, the Court resolves all disputes regarding jurisdictional facts in Beltsville's favor. Doing so yields the following facts as the basis for exercising personal jurisdiction over defendants: (1) they entered into an agreement with an Alabama company that conducted business with them from its Alabama offices, (2) they submitted false and fraudulent payment applications to that Alabama company in Alabama, and (3) they induced the Alabama company to issue payment to them from an Alabama bank. The legal question is whether these facts are sufficient to support the exercise of specific personal jurisdiction over Caldwell, Conaboy and C&S in Alabama. The answer is yes.

When faced with a Rule 12(b)(2) motion, "the plaintiff has the twin burdens of establishing that personal jurisdiction over the defendant comports with (1) the forum state's long-arm provision and (2) the requirements of the due-process clause of the Fourteenth Amendment." *Continental Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp.2d 1296, 1306 (S.D. Ala. 2012) (citation omitted); *see also Jackson, Key Practice Solutions, L.L.C. v. Sullivan*, 2015 WL 9275667, *3 (S.D. Ala. Dec. 18, 2015) (same). "In this case, the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Sloss Industries Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007). Thus, the operative inquiry is whether the exercise of personal jurisdiction over Caldwell, Conaboy and C&S in Alabama comports with the guarantees of due process.

As noted, Beltsville has framed this action exclusively in terms of specific jurisdiction, rather than general jurisdiction. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum." *PVC Windoors*, 598 F.3d at

808 (citation and internal quotation marks omitted). "In specific personal jurisdiction cases, we apply the three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton*, 736 F.3d at 1355 (citations omitted). The plaintiff bears the burden of establishing each of the first two prongs, after which the defendant/movant must make a "compelling case" that exercising jurisdiction would violate traditional notions of fair play and substantial justice. *Id.*

Upon careful review of the parties' arguments and the record facts, the Court concludes that Beltsville has met its threshold burden. For the first prong of the due process test, the Court's "inquiry must focus on the direct causal relationship among the defendant, the forum, and the litigation." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (citation and internal quotation marks omitted). Here, Beltsville's contract and tort claims against defendants arise directly out of those defendants' contacts with Alabama. After all, defendants are connected to Alabama by virtue of having contracted with an Alabama entity and having directed allegedly fraudulent payment applications to that Alabama entity in Alabama. Thus, there is a direct causal relationship among defendants, Alabama, and Beltsville's claims. The first prong is plainly satisfied.

As for the second prong, Beltsville properly alludes to the "effects test" for purposeful availment, pursuant to which "a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Louis Vuitton*, 736 F.3d at 1356. The "effects test" is satisfied when the defendant's tort is "intentional," "aimed at the forum state," and "caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* (citation omitted). Plaintiff's factual showing is that defendants intentionally submitted false payment applications to Beltsville, which is an Alabama-based entity conducting business with defendants from its Alabama offices and making payments to defendants via an Alabama bank. Such circumstances are sufficient to satisfy Beltsville's burden under the "effects test" for purposeful availment; indeed, they tend to show that defendants committed an intentional tort aimed at Alabama and

causing harm that defendants should have anticipated would be suffered in Alabama.[2] *See, e.g., Felland v. Clifton*, 682 F.3d 665 (7th Cir. 2012) (effects test satisfied where nonresident defendant directed multiple communications containing misrepresentations to resident defendant in forum state in furtherance of ongoing fraudulent scheme, such that those communications were expressly aimed at forum state); *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001) ("[M]aking phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action."); *Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 333-34 (5th Cir. 1982) (nonresident defendant purposefully availed himself of forum state's benefits by placing defamatory telephone call to forum state, the injurious effect of which was felt entirely by a resident of the forum state); *Hutton & Hutton Law Firm, LLC v. Girardi & Keese*, 96 F. Supp.3d 1208, 1224 (D. Kan. 2015) (finding effects test satisfied where nonresident defendant mailed false and defamatory statements to Kansas). Defendants' briefs neither address the effects test nor rebut its application here.[3]

---

[2] Any suggestion that defendants did not know where Beltsville was receiving its payment applications or conducting business with them is not persuasive for purposes of a Rule 12(b)(2) analysis. After all, the Construction Agreement between Beltsville and Caldwell (which was later assigned to C&S) specifies that all notices under the contract are to be delivered to Beltsville at a mailing address in Mobile, Alabama (which accompanied the email address to which defendants directed their payment applications). (Doc. 1-1, Exh. 1, at Article 24.) On this record and on Rule 12(b)(2) review, the Court cannot credit any contention by defendants that they lacked knowledge that Beltsville was conducting its business activities from Alabama, or that plaintiff would receive and process their payment applications in Alabama.

[3] To be sure, defendants correctly observe that merely contracting with an Alabama entity does not create minimum contacts with Alabama, and that Beltsville's unilateral acts cannot create minimum contacts for defendants in Alabama. *See, e.g., Walden v. Fiore*, 134 S.Ct. 1115, 1125, 199 L.Ed.2d 12 (2014) ("Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."); *Diamond Crystal*, 593 F.3d at 1268 ("neither merely contracting with a forum resident nor the forum resident's unilateral acts can establish sufficient minimum contacts"). But Beltsville's facts show a direct connection among defendants, Alabama and this litigation; in particular, defendants submitted the false payment applications on which Beltsville's claims are based to Beltsville *in Alabama*. Defendants' transmission of fraudulent material to Beltsville in Alabama distinguishes this case from those cited by defendants, and provides a proper jurisdictional hook under the purposeful availment prong, whether analyzed using the effects test or the traditional minimum contacts analysis. The traditional test turns on whether a nonresident defendant's contacts with the forum "(1) are related to the plaintiff's cause
(Continued)

Beltsville having satisfied the first two prongs of the due process test, defendants "must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Diamond Crystal*, 593 F.3d at 1267. The Eleventh Circuit has emphasized that "only in highly unusual cases" will this requirement be satisfied, and only where the defendant "demonstrate[s] that the assertion of jurisdiction in the forum will make litigation so gravely difficult and inconvenient that he unfairly is at a severe disadvantage in comparison to his opponent." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 948 (11th Cir. 1997) (citation and internal marks omitted). The sum total of defendants' argument on this point in their principal brief is subsumed within a footnote. In that footnote, defendants state that (i) they are not from Alabama, (ii) most evidence and witnesses are likely in Maryland, (iii) Beltsville's only interest in litigating the case here is one of convenience, and (iv) Alabama has little interest in a dispute about a Maryland construction project. (Doc. 3, at 7-8 n.5.) This showing does not come close to the requisite "constitutionally significant inconvenience." *Republic of Panama*, 119 F.3d at 948. Simply put, defendants have not presented a compelling case that exercising personal jurisdiction over them would be unconstitutionally unfair.[4]

---

of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357. Again, defendants' contacts with Alabama include directing numerous payment applications containing false representations to Alabama in order to receive payment from an Alabama entity. Under the circumstances, all three questions are properly answered in the affirmative.

[4] In particular, defendants have made no specific showing that litigating this action in Alabama will make litigation "so gravely difficult and inconvenient" as to place them at a "severe disadvantage" relative to Beltsville. There are simply no facts to support such a conclusion. Even if there were, other aspects of defendants' "fair play and substantial justice" analysis are misguided. Contrary to defendants' characterization, this is not a case about a Maryland construction project. Rather, it is a case about allegedly fraudulent representations directed to an Alabama business in Alabama that deceived said business into making payments to the perpetrators of the fraud. Alabama certainly does have a strong interest in adjudicating that dispute. The Court also has no facts before it that might support a conclusion that most evidence and witnesses are located in Maryland, or somewhere other than Alabama. Defendants have not come close to meeting their stringent burden of showing that the exercise of jurisdiction over them here would implicate traditional notions of fair play and substantial justice.

For all of these reasons, the Court concludes that personal jurisdiction is properly exercised over defendants Caldwell and C&S in this forum on a specific personal jurisdiction theory. The Motion to Dismiss is **denied** as to this issue.

### B. *Personal Jurisdiction and Sufficiency of Claims Against Defendant Conaboy.*

Defendants' Motion to Dismiss also raises Rule 12(b)(2) and 12(b)(6) issues specific to defendant Thomas R. Conaboy. Those issues are intertwined, and may be addressed efficiently together. As to Rule 12(b)(2), defendants' position is that personal jurisdiction is lacking as to Conaboy individually because there is no allegation that he entered into a contract with Beltsville, or that he had ever been to Alabama, and the corporate defendants' contacts cannot be ascribed to Conaboy in his individual capacity. As to Rule 12(b)(6), defendants similarly posit that Beltsville "has failed to allege any facts that would give rise to a claim against Conaboy individually," inasmuch as he is not a party to the Beltsville contract and no factual basis for piercing the corporate veil has been pleaded. (Doc. 3, at 8-10.)

Defendants are, of course, correct that the contacts of Caldwell and C&S with Alabama, without more, do not create personal jurisdiction over Conaboy individually. *See, e.g., Continental Motors*, 882 F. Supp.2d at 1311 ("Pursuant to the fiduciary shield doctrine embraced by Alabama courts, jurisdiction over individual officers and employees of a corporation may not be predicated on the court's jurisdiction over the corporation itself, but instead there must be a showing that the individual officers engaged in some activity that would subject them to the state's long-arm statute before *in personam* jurisdiction can attach.") (citations and internal quotation marks omitted). That said, a defendant's status as a corporate agent does not shield him from personal jurisdiction for his own jurisdictional contacts, irrespective of whether his acts directed at the forum state were performed on his own behalf or on behalf of the entity as to which he is an agent. *See, e.g., Ex parte Kohlberg Kravis Roberts & Co., L.P.*, 78 So.3d 959, 977 (Ala. 2011) (recognizing that "corporate agent status does not insulate the agent personally from his or her jurisdictional contacts with a state or from personal jurisdiction in the state," and finding that personal jurisdiction existed where "individual defendants allegedly engaged in

tortious activity directed toward the State of Alabama in connection with the leveraged recapitalization and resulting acquisition of Bruno's").[5]

Beltsville's Complaint alleges that each of the fraudulent payment applications (or, more precisely, the fraudulent "Partial Release and Waiver of Lien" statements submitted with those payment applications, falsely certifying that all subcontractors had been paid in full) "was signed by Defendant Conaboy on behalf of himself and the other Defendants." (Doc. 1-1, ¶ 18.) Thus, Beltsville's pleading reflects that Conaboy himself made the fraudulent misrepresentations on which the causes of action delineated in the Complaint are predicated. Those misrepresentations were directed to Beltsville at its Alabama offices. Thus, personal jurisdiction over Conaboy is appropriate pursuant to the above-cited authorities not because of his business connection to the other defendants, but because he is being sued in this action for his own contacts directed at Alabama, thereby creating the requisite nexus between and among Conaboy, Beltsville's claims, and this forum so as to give rise to personal jurisdiction. Defendants' Rule 12(b)(2) Motion as to defendant Conaboy lacks merit.

The analysis is much the same with respect to defendants' Rule 12(b)(6) argument that the Complaint fails to state a claim against Conaboy. Defendants reason that Conaboy cannot be held liable for signing fraudulent "Partial Release and Waiver of Lien Statements" as alleged in the Complaint because "[a]ll documents signed by Conaboy clearly indicate that Conaboy signed them only in his capacity as officer and/or member of a separate corporate entity." (Doc. 11, at 7.) Such reasoning (*i.e.*, that Conaboy is exempt from individual liability for alleged fraudulent conduct in which he engaged in a corporate capacity) is irreconcilable with settled law. In Alabama, "[a] corporate agent who personally participates, albeit in his or her capacity as such

---

[5] *See also Sieber v. Campbell*, 810 So.2d 641, 645 (Ala. 2001) ("corporate-agent status does not insulate the agent from the personal jurisdiction of a state court for the litigation of those torts, or any other claims pendent to that lawsuit"); *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 392 (11th Cir. 1988) ("[A] defendant's status as an employee does not somehow insulate him from jurisdiction. … The critical inquiry is whether the individual defendant can incur personal liability for his acts in the forum.") (citations and internal marks omitted); *Hampton-Muhamed v. James B. Nutter & Co.*, 2015 WL 13322125, *5 (N.D. Ga. Feb. 20, 2015) ("If substantive liability can extend to an individual for acts performed on behalf of a corporation, then the individual may be amenable to suit in the forum state if the individual is within the reach of the forum's long arm statute and can survive the minimum contacts analysis.").

agent, in a tort is personally liable for the tort." *Sieber v. Campbell*, 810 So.2d 641, 645 (Ala. 2001).[6] In its current form, the Complaint alleges that Conaboy personally participated in the fraudulent activity directed at Beltsville in Alabama; therefore, plaintiff has stated a cognizable claim against Conaboy, notwithstanding defendants' assertion that he was acting solely in his capacity as an officer or member of C&S or Caldwell. Defendants' Rule 12(b)(6) Motion concerning the claims against Conaboy is properly **denied**.

## III. Motion to Compel Arbitration.

In the alternative to their unsuccessful Rule 12(b)(2) and Rule 12(b)(6) Motions, defendants move to compel this case to arbitration. As grounds for this Motion, defendants point to the arbitration provision embedded in the Construction Agreement between Beltsville and defendant Caldwell, which was later assigned to (and is binding on) defendant C&S. The relevant portion of the Agreement states provides as follows:

> "The parties hereto agree that all disputes, claims or controversies of any kind or nature arising between the parties or arising from or relating to this contract or the relationships which result from this contract, including, but not limited to, all controversies relating to the existence, construction, performance, enforcement or breach of the contract, claims against a party's bond, or tort claims shall be fully and finally resolved by binding arbitration. It is the intent of the parties that these provisions shall apply to all controversies to the fullest extent. … In all other respects, the parties and arbitrators shall be guided by the Construction Industry and Commercial rules and procedures of the American Arbitration Association."

(Doc. 1-1, Exh. 1, ¶ 18.4.)

The Federal Arbitration Act ("FAA"), which governs the Motion to Compel Arbitration, provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In conformity with the FAA, "courts must place arbitration agreements on an equal footing with

---

[6] *See also Bethel v. Thorn*, 757 So.2d 1154, 1158 (Ala. 1999) ("Bethel argues that Thorn, as president of Diesel, can be held individually liable for the fraudulent acts or omissions he personally committed in his capacity as a corporate officer. We agree that this is a correct statement of law."); *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So.2d 774, 775 (Ala. 1986) ("In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity."); *Allstate Ins. Co. v. Regions Bank*, 2015 WL 4073184, *22 (S.D. Ala. July 2, 2015) ("If Jones committed those torts, it makes no legal difference whether he did so in a representative / agency capacity or not. Either way, he would remain liable for his own tortious conduct.").

other contracts, and enforce them according to their terms." *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1349 (11th Cir. 2014) (citations omitted). Indeed, the Supreme Court has directed that "[w]hether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) (citation and internal quotation marks omitted). Also, when courts are tasked with enforcing arbitration agreements, "due regard must be given to the federal policy favoring arbitration, and ambiguities to the scope of the arbitration clause itself resolved in favor of arbitration." *Inetianbor*, 768 F.3d at 1353 (citation and internal quotation marks omitted); *see also Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (observing that the FAA "sets forth a clear presumption – 'a national policy' – in favor of arbitration").

Faced with the clear language of Paragraph 18.4, Beltsville offers two arguments against referring this matter to arbitration. First, Beltsville maintains that compelling arbitration here would be "truly inequitable" because (i) the arbitration clause may not cover its claims against Conaboy, and (ii) given its "lack of awareness of Conaboy's fraudulent scheme, Plaintiff did not have the opportunity to make an informed choice in choosing to enter into an arbitration agreement" that would be binding on Conaboy, such that (iii) the arbitration clause is unconscionable. (Doc. 9, at 10-11.) Second, Beltsville argues that compelling arbitration would be inefficient because its claims against Conaboy may be excluded from the arbitration of its claims against C&S and Caldwell. (*Id.* at 11.) Plaintiff's contentions overlook the fact that Conaboy is not asking to be excluded from the arbitration referral and is not arguing that Section 18.4 does not apply to Beltsville's claims against him; to the contrary, Conaboy has expressly moved this Court to refer those claims to arbitration, just like Beltsville's claims against C&S and Caldwell. (*See* doc. 3, at 12 n.7 ("Although Conaboy is not a named party to the Contract, he is still entitled to enforce the arbitration provision …."); doc. 11, at 3 ("Beltsville's claims against Conaboy … must also be sent to arbitration if this Court does not dismiss them").) Defendants are not asking for arbitration to proceed only as to the claims against C&S and Caldwell, but not those against Conaboy. Instead, defendants specifically seek to enforce the arbitration provision as to the claims against Conaboy, same as C&S and Caldwell. Thus, Beltsville's objections to the fairness (or lack thereof) of a scenario in which only the C&S /

Caldwell claims are arbitrated amount to speculation about improbable hypotheticals that appear to have no grounding in fact.[7]

Besides, Beltsville's objections go to the validity and scope of the arbitration clause. Such questions are for the arbitrator to decide where there is "clear and unmistakable evidence that the parties intended the arbitrator to rule on the validity of the arbitration agreement itself." *Terminix Int'l Co. v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1331 (11th Cir. 2005) (citations and internal quotation marks omitted). When an arbitration agreement expressly adopts AAA rules conferring authority on the arbitrator to adjudicate objections to the agreement's existence, scope or validity, courts have routinely found the requisite "clear and unmistakable evidence." *See U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) ("When the parties incorporated into the 2007 contract the rules of the Association, they clearly and unmistakably contracted to submit questions of arbitrability to an arbitrator.").[8] Section 18.4 of the Construction Agreement specifies that the parties' arbitration "shall be guided by the Construction Industry and Commercial rules and procedures of the American Arbitration Association." Those rules specify that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Rule R-7(a), Commercial Arbitration Rules and Mediation Procedures of the

---

[7] Having vigorously urged this Court to refer Beltsville's claims against him to arbitration pursuant to Paragraph 18.4, Conaboy would likely be judicially estopped from arguing to the arbitrator that Beltsville's claims against him exceed the scope of the arbitration clause. Certainly, Beltsville's brief confirms that it has no intention of asking the arbitrator to declare its claims against Conaboy not to be arbitrable, or seeking to limit arbitration to the claims against C&S and Caldwell. In short, all parties appear to agree that Beltsville's claims against Conaboy should be arbitrated alongside those against C&S and Caldwell, thereby negating Beltsville's articulated concerns about inequity, unconscionability, and inefficiency if the arbitration moved forward without Conaboy.

[8] *See also Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) ("We agree with most of our sister circuits that the express adoption of [AAA rules into an arbitration agreement] presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.") (citations omitted); *Terminix*, 432 F.3d at 1332-33 ("By incorporating the AAA Rules … into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid.").

American Arbitration Association (effective October 1, 2013).[9] Thus, even if a party were actually arguing that (i) only Beltsville's claims against C&S and Caldwell (and not those against Conaboy) should be arbitrated, thereby triggering Beltsville's unconscionability / invalidity arguments concerning Paragraph 18.4, or (ii) Beltsville's claims against Conaboy are outside the scope of Paragraph 18.4, there is clear and unmistakable evidence that the parties agreed to arbitrate issues of validity and scope of their arbitration agreement. In short, these issues (if they are even properly raised by a party, as opposed to being a mere hypothetical exercise instigated by Beltsville) are properly decided in this case by the arbitrator, not by this Court.[10]

For all of these reasons, plaintiff's objections to defendants' Motion to Compel Arbitration are not well-taken and provide no viable basis for declining to compel arbitration here. Contrary to Beltsville's assertions, it would not be inequitable, unconscionable, or inefficient to compel arbitration in these circumstances. Accordingly, the Court will enforce the parties' clear and unmistakable agreement that the arbitrator shall resolve arbitrability objections and decide on the existence, scope and validity of the arbitration agreement. Defendants' Motion to Compel Arbitration is **granted**.

The parties' briefs do not address whether Beltsville's claims should be stayed or dismissed pending arbitration. According to the text of the FAA, when a court finds that an issue is properly referred to arbitration pursuant to an agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had …." 9 U.S.C. § 3. Moreover, the Eleventh Circuit has opined that where a district court found that claims were

---

[9] No party has submitted these rules as exhibits in briefing the Motion to Compel Arbitration; however, the content of the rules is not in dispute and may be confirmed by visiting www.adr.org, as the Eleventh Circuit and district courts in this Circuit have routinely done in similar circumstances. *See, e.g., Terminix*, 432 F.3d at 1332 (citing www.adr.org as source in identifying and quoting specific AAA rules incorporated into parties' arbitration agreement for purposes of ascertaining whether parties had clearly and unmistakably agreed that arbitrator should decide validity of arbitration clause).

[10] *See Rainbow Cinemas, LLC v. Consolidated Construction Company of Alabama*, --- So.3d ----, 2017 WL 2610506, *6 (Ala. June 16, 2017) (in a case where arbitration provision had incorporated AAA rules, explaining that "although the question whether an arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability usually decided by the court, here that question has been delegated to the arbitrator. The arbitrator, not the court, must decide that threshold issue.") (citation omitted).

subject to arbitration, it "erred in dismissing the claims rather than staying them. Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration." *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992).[11] In light of these authorities, and in the absence of any contrary argument by any party, Beltsville's claims will be stayed, not dismissed, pending arbitration.

## IV. Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. Defendants' Motion to Dismiss or, in the Alternative, Motion to Compel Arbitration (doc. 3) is **granted in part**, and **denied in part**;

2. The Motion is **granted** insofar as defendants seek to compel arbitration of all claims asserted by plaintiff, Beltsville Land, LLC, against them in the Complaint, and all such claims are hereby **referred** to binding arbitration in accordance with the terms of Paragraph 18.4 of the Construction Agreement attached to the Complaint as Exhibit 1 (*see* doc. 1-1, at Exh. 1);

3. The Motion is **denied** in all other respects, including specifically defendants' Motion to Dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction and defendants' Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim against defendant Thomas R. Conaboy;

4. There being no remaining issues for litigation in these court proceedings, this action is **stayed** pending arbitration; and

5. Notwithstanding this determination, the Court retains jurisdiction to confirm or vacate any resulting arbitration award under 9 U.S.C. §§ 9-10. *See TranSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1297 (11th Cir. 1998). To keep the Court apprised of developments in the arbitral proceedings, defendants are **ordered** to

---

[11] *See also Thomas v. Port II Seafood & Oyster Bar, Inc.*, 2016 WL 8732527, *4 (S.D. Ala. July 8, 2016) ("[W]here a plaintiff initiates litigation without satisfying arbitration requirements, courts routinely stay rather than dismiss the proceedings to allow for implementation of the agreed-upon dispute resolution mechanism.") (citation omitted); *Hughes v. Butch Oustalet Chevrolet-Cadillac, LLC*, 2016 WL 1732750, *2 (S.D. Ala. Apr. 29, 2016) ("Even if … this Court has discretion to dismiss, rather than stay, plaintiffs' claims, the Court declines to exercise that discretion and expressly concludes that a stay, rather than dismissal, is appropriate under the circumstances presented here.").

file, on or before the **first Wednesday of each month**, a written report reflecting the status of the arbitration proceedings. The first such report is due on or before **March 7, 2018**.

DONE and ORDERED this 8th day of February, 2018.

>s/ WILLIAM H. STEELE
>UNITED STATES DISTRICT JUDGE